IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MALIK MANSON, | : | Civil No. 3:23-cv-204 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| LIEUTENANT VOGT, | : | |
| Defendant | : | |

## MEMORANDUM

Plaintiff Malik Manson ("Manson"), an inmate housed at the State Correctional Institution, Rockview, Pennsylvania ("SCI-Rockview"), initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The sole named Defendant is Lieutenant Vogt. Presently before the Court is Defendant's Rule 12(b) motion (Doc. 12) to dismiss. For the reasons set forth below, the motion will be granted in part and denied in part.

### I. Allegations of the Complaint

Manson alleges that on June 6, 2021, at 9:05 p.m., SCI-Rockview staff sprayed him with oleoresin capsicum ("OC") spray. (Doc. 1 ¶ 7). He explains that OC spray was deployed because he removed his restraints. (Doc. 1-1, p. 1). After he was sprayed, staff removed Manson from his cell for decontamination. (Doc. 1 ¶ 7). Manson states that he refused to have his eyes decontaminated because he feared the nurse would put drops of OC in his eyes. (Doc. 1-1, p. 1). Manson alleges that Defendant Vogt then ordered him returned to the same cell, which was allegedly "still doused in 'OC' spray, and uncleaned

fecal matter." (Doc. 1 ¶ 7). Manson further alleges that Defendant Vogt returned him to the cell without any clothes or a smock. (*Id.* ¶ 8). Manson allegedly informed Defendant Vogt of the cell's conditions before being placed in the cell. (*Id.* ¶ 11).

As a result of his exposure to OC spray, Manson alleges that he experienced burning in his eyes and on his skin, and difficulty breathing. (*Id.* ¶ 9). Manson further alleges that he was naked for several hours and was exposed to OC and unsanitary cell conditions for a few days, which caused physical and emotional suffering. (*Id.* ¶¶ 10, 12).

Defendant Vogt moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 12). The motion is fully briefed and ripe for resolution.

## II.   **Legal Standard**

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III. Discussion

### A. Eighth Amendment Conditions of Confinement Claim

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. *See Wharton v. Danberg*, 854 F.3d 234, 247 (3d Cir. 2017). There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; the use of excessive force; and failure to protect from assaults by other inmates. An Eighth Amendment claim includes both objective and subjective components. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Under the objective prong, the Court must consider "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson*, 501 U.S. at 298). However, "[w]hat is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue." *Id.* The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298.

4

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm." *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015). "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination . . . deprive inmates of the minimal civilized measures of life's necessities." *See id.* at 347. Such necessities include "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9. However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Wilson*, 501 U.S. at 304 and *Rhodes*, 452 U.S. at 347).

### 1. *Unsanitary Cell Conditions*

Manson alleges that Defendant Vogt placed him in a cell with fecal matter and without any clothes or a smock. (Doc. 1 ¶¶ 7-8). Defendant argues that this claim must be dismissed because Manson does not allege that he suffered harm as a result of these

5

conditions and because courts have found that exposure to similar conditions for longer periods of time did not violate the Eighth Amendment. (Doc. 13, pp. 6-12).

The Third Circuit has recognized that "even though administrative confinement in a dry cell is unpleasant and often unsanitary, so long as the conditions of that confinement are not foul or inhuman, and are supported by some penological justification, they will not violate the Eighth Amendment." *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020). The Court concludes that the conditions of which Manson complains, while unpleasant, do not rise to the level of an Eighth Amendment violation. The complaint suggests that Manson was subjected to these conditions for a short duration of time—from approximately 9:00 p.m. on June 6, 2021, to June 7, 2021. (Doc. 1 ¶ 12; Doc. 1-1). The Court recognizes that the "duration and conditions of…confinement cannot be ignored in deciding whether such confinement meets constitutional standards;" however, the "touchstone is the health of the inmate." *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992), *superseded by statute on other grounds as stated in Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000).

The Third Circuit has held that exposure to urine or feces does not constitute a substantial risk of serious harm. *See Gilblom v. Gillipsie*, 435 F. App'x 165, 169 (3d Cir. 2011) (denying conditions of confinement claim when inmate spent approximately thirty-six (36) hours in dry cell with his own excrement). Likewise, the denial of clothing for a short period of time does not rise to the level of an Eighth Amendment violation. *See Freeman v. Miller*, 615 F. App'x 72, 77 (3d Cir. 2015). 615 F. App'x at 77 (denial of clothing and

mattress for seven (7) days); *Adderly v. Ferrier*, 419 F. App'x 135, 139-40 (3d Cir. 2011) (denial of clothing and mattress for seven (7) days). Overall, while the Court recognizes that the conditions of which Manson complains were unpleasant, "the Constitution does not mandate comfortable prisons, and prisons…which house persons convicted of serious crimes, cannot be free of discomfort." *Rhodes*, 452 U.S. at 349. The Court, therefore, will grant Defendant's motion to dismiss with respect to Manson's Eighth Amendment claim concerning these conditions of his cell.

### 2.  *Exposure to OC Spray*

Manson also takes issue with his placement in a cell contaminated with OC spray. (Doc. 1 ¶¶ 7-8). He asserts that his Eighth Amendment rights were violated because the exposure to OC spray constituted deliberate indifference to his health and safety. (*Id.* ¶ 15). Defendant argues that "alleged cell contamination with 'OC' spray does not create a substantial risk of harm." (Doc. 13, p. 8). The Court, however, disagrees. "[C]ourts have held that the failure to decontaminate prisoners or otherwise provide medical treatment for prisoners exposed to pepper spray can support a claim for a violation of the Eighth Amendment where the 'failure to treat a prisoner's condition could result in further significant injury' or the 'unnecessary and wanton infliction of pain.'" *Bomar v. Wetzel*, No. 17-cv-1035, 2020 WL 907641, at *5 (W.D. Pa. Feb. 3, 2020) (quoting *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002)), *report and recommendation adopted by* 2020 WL 906720 (W.D. Pa. Feb. 25, 2020). Although Manson states that he refused to have his eyes decontaminated,

he maintains that the cell was never decontaminated, and he was placed back in the same cell that was covered in OC spray. Defendant argues that because Manson refused to have his eyes decontaminated, he "cannot[] show his condition was caused by secondary exposure due to the conditions in his cell and not the initial spray." (Doc. 13, p. 10). Clearly, this is an issue that is more appropriately addressed at the summary judgment stage. Moreover, Manson avers that Defendant was aware of the "uncontaminated conditions" of the cell, but "refused to take action", and placed him back in the cell. (Doc. 1 ¶¶ 11, 15). He further avers that he suffered physical and emotional issues from the exposure to OC spray, such as burning in his eyes and on his skin, and difficulty breathing. (*Id.* ¶¶ 9, 12). Accordingly, the Court concludes that Manson has set forth a plausible deliberate indifference claim regarding the exposure to OC spray. Therefore, the Court will deny Defendant's motion to dismiss with respect to Manson's Eighth Amendment claim concerning the exposure to OC spray.

## IV. Conclusion

Defendant's motion (Doc. 12) to dismiss will be granted in part and denied in part. A separate Order shall issue.

*/s/ Robert D. Mariani*
Robert D. Mariani
United States District Judge

Dated: November 30, 2023