IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MALIK MANSON, | : Civil No. 3:23-cv-204 |
| Plaintiff | : |
| | : (Judge Mariani) |
| v. | : |
| | : |
| LIEUTENANT VOGT, | : |
| Defendant | : |

## MEMORANDUM

Plaintiff Malik Manson ("Manson"), an inmate housed at all relevant times at the State Correctional Institution, Rockview, Pennsylvania ("SCI-Rockview"), initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The sole named Defendant is Lieutenant Vogt. Before the Court is Defendant's motion (Doc. 29) for summary judgment pursuant to Federal Rule of Civil Procedure 56. Manson failed to respond to the motion and the time for responding has now passed.[1] Therefore, the motion is deemed unopposed and ripe for resolution. For the reasons set forth below, the Court will grant the motion.

---

[1] Manson was directed to file a brief in opposition to Defendant's motion and was admonished that failure to file an opposition brief would result in Defendant's motion being deemed unopposed. (Doc. 33) (citing LOCAL RULE OF COURT 7.6).

I.   **Statement of Undisputed Facts**[2]

Manson was housed at SCI- Rockview from June 6, 2021 to February 14, 2023. (Doc. 30 ¶ 1). Manson alleges that on or about June 6, 2021, he was sprayed with oleoresin capsaicin ("OC") spray while housed in a cell equipped for suicidal inmates. (Doc. 1 ¶ 6; Doc. 30 ¶ 3). He further alleges that Defendant Vogt ordered him to be removed from the cell to have his eyes decontaminated. (Doc. 1 ¶ 7; Doc. 30 ¶ 4). Manson admits that he refused decontamination because he was afraid the nurse would put additional OC spray in his eyes instead of flushing them. (Doc. 1-1, p. 1; Doc. 30 ¶ 5; Doc. 30-2, pp. 6, 30). He alleges that Defendant Vogt ordered him returned to his cell, which he claims was still doused in OC spray. (Doc. 1 ¶ 7; Doc. 30 ¶ 6). Manson asserts that he was exposed to OC spray in his contaminated cell and suffered a burning sensation in his eyes and on his

---

[2]   Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial. See id. Unless otherwise noted, the factual background herein derives from the complaint, and Defendant's Rule 56.1 statement of material facts and supporting exhibits. (Docs. 1, 30, 30-2). Manson did not file a response to Defendant's statement of material facts. Therefore, as authorized by Local Rule 56.1, the Court will admit as uncontroverted the statement of facts submitted by Defendant. (See Doc. 33 ¶ 2) (advising Manson that failure to file a responsive statement of material facts would result in the facts set forth in Defendant's statement of material facts being deemed admitted); see also LOCAL RULE OF COURT 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); Rau v. Allstate Fire & Cas. Ins. Co., 793 F. App'x 84, 87 (3d Cir. 2019) (upholding this Court's decision to strike non-movant's non-responsive counterstatement of facts under Local Rule 56.1); Weitzner v. Sanofi Pasteur Inc., 909 F.3d 604, 613 (3d Cir. 2018) (finding that "the District Court is in the best position to determine the extent of a party's noncompliance with Local Rule 56.1, as well as the appropriate sanction for such noncompliance").

skin. (Doc. 1 ¶¶ 8-9; Doc. 30 ¶ 7). Manson claims that Defendant Vogt knew of the condition of his cell but "refused to take action." (Doc. 1 ¶¶ 11, 15; Doc. 30 ¶ 8).

Defendant maintains that Manson cannot produce any competent, admissible evidence to demonstrate that he and his cell were contaminated with OC spray. (Doc. 30 ¶ 11). Defendant further asserts that Manson lacks any competent, admissible evidence to demonstrate that if he and his cell were contaminated with OC spray, that such exposure would result in further injury or the unnecessary and wanton infliction of pain upon him, thereby placing him at substantial risk of harm. (*Id.* ¶ 12).

Further, Defendant maintains that Manson cannot produce any competent, admissible evidence to establish that Vogt was aware that Manson and his cell were contaminated with OC spray. (*Id.* ¶ 13). Assuming that Defendant Vogt was aware that Manson and his cell were contaminated with OC spray, Defendant asserts that Manson cannot produce any competent, admissible evidence to establish that Defendant Vogt knew, or appreciated that the contamination with OC spray created a substantial risk of harm. (*Id.* ¶ 14). Assuming that Defendant Vogt knew or appreciated that Manson and his cell's contamination with OC spray created a substantial risk of harm to him, Defendant asserts that Manson cannot produce any competent, admissible evidence to demonstrate that Defendant disregarded that risk by failing to take action. (*Id.* ¶ 15).

The written video report associated with this incident indicates that Manson was in his cell and began self-mutilating his genitals. (Doc. 30-2, p. 6). A sergeant ordered

3

Manson to stop, but he refused. (*Id.*). Therefore, the sergeant applied a burst of OC spray into the cell. (*Id.*). After the administration of the OC spray, a video of the incident was recorded. (Doc. 30-3). The handheld video recording begins with a briefing of the event conducted by Defendant Vogt. (*Id.*). Following the briefing, the video reflects Defendant Vogt ordering Manson to approach the cell door to be cuffed by a correctional officer. (*Id.*). Manson complies with the cell extraction; restraints and a spit hood are applied, and Manson is escorted from his cell. (*Id.*). Manson is immediately escorted to the triage area where a nurse is waiting. (*Id.*). The nurse medically assesses Manson. (*Id.*). Defendant Vogt orders that Manson's cell be cleaned. (*Id.*; Doc. 30 ¶ 20). The video shows officers cleaning Manson's cell before he was returned and secured in the cell. (Doc. 30-3; Doc. 30-2, p. 6; Doc. 30 ¶¶ 21, 28). Manson is then escorted back to his cell. (Doc. 30-3). Defendant Vogt orders the video to continue recording for three to five minutes before concluding. (*Id.*).

Defendant maintains that Manson cannot produce any competent, admissible evidence that he suffered a legally cognizable harm. (Doc. 30 ¶ 22). Assuming that Defendant Vogt was aware of the existence of a substantial risk of harm to Manson, that he was deliberately indifferent to the existence of that substantial risk of harm, and that Manson suffered a legally cognizable harm, Defendant avers that Manson cannot produce any competent, admissible evidence that his harms were caused by Defendant's deliberate indifference. (*Id.* ¶ 23). Additionally, Defendant maintains that Manson cannot produce any

4

competent, admissible evidence demonstrating that his condition was caused by secondary exposure due to his cell conditions and not because of the initial spray. (*Id.* ¶ 29). Nor can Manson produce any competent, admissible evidence demonstrating that any harm he suffered was the result of Defendant's alleged deliberate indifference and failure to address his cell conditions. (*Id.* ¶ 30).

## II. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the

absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

III. <u>Discussion</u>

    A.    **Eighth Amendment Claims**

        1.    <u>Conditions of Confinement</u>

Plaintiff Manson argues that his exposure to OC spray constituted cruel and unusual punishment in violation of his Eighth Amendment rights. A prison official violates the Eighth Amendment when: (1) the prisoner suffers an objectively, sufficiently serious deprivation; and (2) the prison official acts with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) (stating, "an inmate [is required] to show that 'he is incarcerated under conditions posing a substantial risk of serious harm,' and that prison officials demonstrated a 'deliberate indifference' to his health or safety"). Under the first element, a "prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834. To establish deliberate indifference under the second element, the prison official must: (1) know of and disregard an excessive risk to inmate health or safety; (2) be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists; and (3) draw the inference. *Id.* at 837.

Manson admits that staff members, including Defendant Vogt, removed him from his cell to have his eyes decontaminated. (Doc. 1 ¶ 7; Doc. 1-1, p. 1; Doc. 30 ¶¶ 16, 24; Doc. 30-2, p. 6). Manson admits that he was examined by medical staff, that medical staff offered to decontaminate his eyes, and that he refused to have his eyes decontaminated.

7

(*See* Doc. 1-1, p. 1 ("Lt. Vogt and a few other officers arrived at my door shortly after to take me out the cell and decontaminate my eyes when I was pulled out my cell I refused to get my eyes decontaminated due to my fear that the nurse was going to put drops of O.C. in my eyes. . . .") (*see also*, Doc. 30 ¶¶ 17, 25; Doc. 30-2, p. 6). The uncontroverted evidence, including a video of the incident, also confirms that Defendant Vogt ordered that Manson's cell be cleaned and that the cell was cleaned before Manson was returned to the cell. (Doc. 30 ¶¶ 20-21, 28; Doc. 30-2, p. 6; Doc. 30-3).

There is no evidence that Defendant Vogt knew of and disregarded a substantial risk of harm caused by the conditions Manson alleges. The undisputed evidence confirms that Manson was engaged in self-mutilation in his cell and had been ordered to stop his actions. Manson refused to comply with the orders and OC spray was deployed in an effort to gain his compliance. Based upon the abundance of undisputed supporting materials submitted by Defendant, it is apparent that prior to using OC spray a correctional official attempted to stop Manson from self-harm, which was ignored by Manson. After the OC spray was deployed, Manson was treated by medical personnel, his cell was cleaned, and he was returned to the cell. Manson has presented no evidence demonstrating that he was subjected to conditions imposing a substantial risk of serious harm upon him. Therefore, the Court will grant Defendant's motion for summary judgment with respect to Manson's Eighth Amendment conditions of confinement claim.

### 2. Deliberate Indifference to a Serious Medical Need

Manson also raises a claim of deliberate indifference to his serious medical needs under the Eighth Amendment. To establish a violation of his constitutional right to adequate medical care, a plaintiff must demonstrate, (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Courts have held that "the failure to decontaminate prisoners following exposure to OC spray, or otherwise provide medical treatment after the exposure, may support a claim for a violation of the Eighth Amendment." *Pressley v. Miller*, 2022 WL 17414866, at *3 (3d Cir. Dec. 5, 2022) (citation omitted). Here, however, the video evidence shows that officers immediately took Manson to the medical triage area after exposure to OC spray, and a nurse promptly medically evaluated him. (Doc. 30-3). Manson admits that he refused to allow the nurse to decontaminate his eyes at that time. (Doc. 1-1, p. 1; Doc. 30 ¶¶ 25-27). The undisputed evidence also shows that Defendant Vogt ordered that Manson's cell be cleaned and that the cell was cleaned before Manson was returned to the cell. Manson's claim that Defendant Vogt "refused to take action" (Doc. 1 ¶ 15), does not support a claim because it is undisputed that he received medical treatment for his exposure to OC spray and that his cell was cleaned.

Moreover, non-medical defendants like Defendant Vogt cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a

9

prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts…a non-medical prisoner official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (discussing *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official…will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

Based on the record evidence, the Court finds that no reasonable factfinder could find that Defendant Vogt was deliberately indifferent to Manson's medical needs. As stated, the undisputed evidence clearly shows that Manson was not denied medical treatment after being sprayed with the OC spray. After the OC spray was administered, Manson was immediately escorted to the unit triage area where he was evaluated and treated by a nurse. Other than the self-inflicted wound to Manson's scrotum, no other injuries were noted, and Manson reported no other injuries or complaints. (Doc. 30-2, pp. 28-32). These events are corroborated by the video recording. (Doc. 30-3).

In opposing a motion for summary judgment, Manson cannot rely on unsupported allegations. The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" and cannot survive Rule 56 scrutiny by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of W. Chester*,

10

891 F.2d 458, 460 (3d Cir. 1989); see also FED. R. CIV. P. 56(c), (e).  This is especially true where, as here, video evidence exists which blatantly contradicts Manson's version of events.  Scott, 550 U.S. at 380-81.  Manson has failed to oppose Defendant's summary judgment motion and, as such, has failed to "come forward with evidence from which it can be inferred that the defendant-officials were…knowingly and unreasonably disregarding an objectively intolerable risk of harm."  Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 259 (3d Cir. 2010) cert. denied, 562 U.S. 1272 (2011) (quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 132 (3d Cir. 2001)).  Manson has thus failed to meet his burden with respect to this Eighth Amendment claim.  The Court finds that no reasonable factfinder could find that Defendant was deliberately indifferent to Manson's medical needs.  Therefore, Defendant Vogt is entitled to summary judgment in his favor on this Eighth Amendment claim.

### B.    Qualified Immunity

Even if Manson had stated a colorable claim relating to his exposure to OC spray, Defendant Vogt is nevertheless entitled to qualified immunity from this claim for damages.  In order to establish a civil rights claim, Manson must show the deprivation of a right secured by the United States Constitution or the laws of the United States.  However, government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first). As stated, the Court finds that Manson failed to establish the violation of a constitutional right. Defendant simply could not have recognized

that exposure to OC spray, after an inmate refuses decontamination and after the inmate's cell was cleaned, would violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Wilson*, 526 U.S. at 609. Therefore, Defendant is protected from liability by qualified immunity.

## IV.   Conclusion

The Court will grant Defendant Vogt's motion (Doc. 29) and enter judgment in his favor. A separate Order shall issue.

Dated: October 18, 2024

Robert D. Mariani
United States District Judge